## PARK v. NEW YORK, L. E. & W. R. CO.

### (Circuit Court, S. D. New York. September 26, 1893.)

RAILROAD COMPANY—LEASE—NONPAYMENT OF RENT—RECEIVER.

Defendant company leased the railroad of petitioner, and operated it for several years. As rental, defendant covenanted to pay 32 per cent. of the gross earnings. The lease provided that a breach by defendant of any of its covenants should be cause of forfeiture, at the option of petitioner, and that thereupon petitioner might enter into possession of the property. On July 25, 1893, on a bill alleging the insolvency of defendant, receivers of its property were appointed. At the time when the receivers entered into possession, defendant was in arrears in payment of the rent already due to an amount of more than $300,000. After the receivers entered into possession, they paid petitioner for the use of the property, out of the assets of the receivership, $331,439,—a little more than the net earnings of the leased property for the same period. This sum, however, was considerably less than the amount stipulated in the lease. On August 8, 1893, upon a petition showing the importance to the petitioner of prompt payment of the sums stipulated by the lease, to enable it to pay its obligations to its bondholders and to subordinate roads leased by it, petitioner asked that the court order the receivers to perform all the obligations of the lease; that they pay the rent then due; that, if without money to make such payment, they should issue receivers' certificates for all rent due or to become due; and that such certificates be decreed a charge and lien upon the property of defendant in the possession of the court and the receivers, prior to defendant's outstanding mortgages. No application was

made to have a forfeiture of the lease, for covenants broken, declared. *Held*, that the receivers did not, by taking possession under the order of the court, become assignees of the term of the lease, committed to an obligation, in any event, to pay the full sum stipulated as rental by the lease; that they had not retained possession for such an unreasonable time, or under such circumstances, as amounted to an election on their part to accept the lease; and that as it appeared that more than the net earnings of the leased property for the period during which the receivers had held it·had been paid to the lessor, the court would not instruct the receivers to pay any more out of the general corpus of the property in the receiver's hands.

In Equity.  Motion by the New York, Pennsylvania & Ohio Railroad Company, as petitioner, to instruct receivers of the defendant as to the making of certain payments to petitioner.  The motion was made upon petition presented August 8, 1893, and adjourned from time to time until September 20th, .when it was heard upon an amended petition, reply, and affidavits.

Chas. E. Whitehead, for petitioner.
Jennings & Russell, for respondent.

LACOMBE, Circuit Judge.  The defendant corporation, owning and operating an extensive system of connecting railroads, made a contract with the corporation petitioner in April, 1883, by which it leased from the petitioner its main line of railroad, extending from Salamanca, N. Y., to Dayton, Ohio, various branches of said road, and the leasehold estates of the petitioner in a number of roads operated as part of its system.  Defendant entered into possession of the property under the lease, and for several years operated it, so far as appears, in accordance with all its terms and covenants.  As rental or compensation for the use of the property, the defendant agreed and covenanted to pay 32 per cent. of its gross earnings.  An increase of percentage was provided for under certain contingencies, the details of which are not material to the present discussion.  It was further provided in the lease that a breach by the defendant of any of the covenants and agreements contained therein should be cause of forfeiture, at the option of the petitioner; that, in the event of such forfeiture, petitioner might enter into possession of the property, —its rights to recover all rent in arrear not to be affected by such forfeiture; and that all damages sustained by petitioner by reason of such forfeiture should be recoverable against the defendant.

It appearing that the defendant was without money to pay its maturing indebtedness, or any immediate hope of raising it; that its property was liable to seizure upon ·attachments and other process in a multiplicity of suits brought in many different courts, under circumstances which would lead to wasteful strife and contention as to the priorities of rival creditors, and would paralyze the operation of the road, and prevent it from continuing, until the final marshaling of its assets and adjustment of conflicting interests, to discharge its duties as a public carrier of passengers,

freight, **and** mails, thereby earning money which the interest of all creditors alike required it to do,—this court, on July 25, 1893, appointed receivers of the defendant. They promptly entered into possession of all the property it owned and held, including petitioner's roads. At the time the receivers thus entered into possession, the Erie Company was in arrears in payment of rent already due to the amount of more than $300,000, for the whole or part of which it had accepted drafts payable in the fall. Since the receivers entered into possession, they have paid the petitioner, for the use of the property, out of the assets of the receivership, $331,439.83, which is a little more than the net earnings of that property for the same period. This sum, however, is considerably less than the amount stipulated in the lease, which calls for the payment of $240,000 on August 15th, and $100,000 on the 1st days of August and September, respectively. The rental stipulated in the lease is largely in excess of the net earnings from the leased property, the affidavits showing that the Erie Company lost, in the operation of the roads of petitioner under the lease, $425,888.39 for the fiscal year ending September 30, 1892, and, for the first 10 months of the present fiscal year, $275,681.06.

Upon this state of facts, and upon a verified petition and supplemental petition showing the essential importance to petitioner of prompt and full payment of the sums stipulated by the lease, to enable it to discharge its own obligations to its bondholders, and to the subordinate roads of its system which itself leases, the New York, Pennsylvania & Ohio Railroad prays:

"That the court would declare and order that the receivers perform all the obligations of the said lease; that the covenants and provisions of the said lease, during the time it has existed and may exist, constitute a charge upon and obligation against the defendant company, and all its property, superior to the rights and claims of any mortgagee of said property; that the receivers pay to the petitioner the amount of rent now remaining due and unpaid; that, if the receivers are without money in hand to presently make such payment in full, they have liberty to agree and arrange with the petitioner for an extension of time for payment, and thereupon to issue their certificates as receivers for all rent now, or at any time hereafter, due or unpaid; that such certificates be decreed and declared, upon the face thereof, to be a charge and lien upon all the property and franchises of the defendant company in the possession of the court and the receivers, prior to any and all of the outstanding mortgages upon the said property and franchises of the defendant company; and that the court would grant to the petitioner such other and further relief in the premises as may, upon consideration, appear to be just and equitable."

The petitioner, upon this application, has carefully refrained from declaring a forfeiture of the lease for covenant broken, and does not ask to be restored to the possession of its property. The question to be passed upon at this stage of the proceedings, therefore, lies somewhat within the scope of the oral argument. Whatever may have been the intent of the parties to the lease when they entered into their contract, there is no suit to reform it now before the court, and it must be construed according to its terms. It provides distinctly and specifically for the payment of certain

sums of money as compensation for. the use of petitioner's property, and reserves to it the right to re-enter into possession if that money is not paid. The right to insist upon the execution of this contract according to its terms—the right to refuse further use or possession of that property to any one who will not or can-not make such payments—is in no way impaired by the fact that the court has taken possession of all the property owned and held by the Erie Company, to administer the same for the interests of all concerned, and has placed its officers, the receivers, as custodians and caretakers, not only to preserve the same, but also to maintain it as a going concern pending the final adjustment. Every piece of such property comes to the receivers' hands in the same condition in which it leaves the hands of the defendant. No lien or contract is disturbed or altered by the court's intervention; and, if the receivers continue to hold a particular piece of property which they found in the possession of the Erie road, and which that road could only continue to hold upon complying with certain conditions, they must, if they so hold it, in like manner conform to these conditions. But the petitioner goes further, and insists that the receivers must continue to hold the property, complying with the conditions, even though their doing so will charge the estate with a burden beyond any possible benefit derivable therefrom. The law, however, is otherwise laid down in Quincy, etc., R. Co. v. Humphreys, 145 U. S. 82, 12 Sup. Ct. Rep. 787; St. Joseph, etc., R. Co. v. Humphreys, 145 U. S. 105, 12 Sup. Ct. Rep. 795. When the receivers took possession of the property now under consideration, the petitioner could not get its rental, because of the insolvency of the defendant. By the mere act of taking possession, the court did not, eo instanti, bind itself or its receivers to carry out the covenants of the lease. The receivers were entitled to a reasonable time to elect whether or not they would adopt the contract, and make it their own, and no action of theirs shows that they have elected so to do. From the papers submitted, it is manifest that the receivers, if they continue to hold and operate the road upon the terms of the lease, will do so at a loss, which could be made good only by diverting to the petitioner the profits which may be earned on other parts of the system. It is conceivable, of course, that such a course might be beneficial for all concerned. The loss to the whole system resulting from the forfeiture, and the retaking of the leased property by its owner, whether such loss be occasioned by disintegration of the system, or by the incurring of some heavy liability for damages, might be far greater than the loss resulting from a continuance of the old lease.

But no facts making out such a case are before the court. The receivers are not asking for instructions as to which course they should elect. Nor, indeed, is such a question one which it is to be expected that the court should decide. It is a question, not of law, but of business judgment, which requires for its intelligent answer an extended experience, a special knowledge, and an inti-

mate acquaintance with every vein and artery of the entire system of defendant's roads, which no court that ever sat or ever will sit could possibly acquire from affidavits, however voluminous, or from arguments, however extended. It is enough to dispose of the prayer of the petitioner to hold that, under the decisions of the supreme court cited supra, the receivers did not, by taking possession under the order of the court, become assignees of the term, committed to an obligation, in any event, to pay the full sum stipulated as rental by the lease; that they have not retained possession for such unreasonable time, or under such circumstances, as will spell out an election on their part to accept the lease; that, it appearing that more than the net earnings of the leased property for the period the receivers have held it have been paid to its owners, this court will not now instruct the receivers to pay any more out of the general corpus of the estate. Miltenberger v. Railway Co., 106 U. S. 286, 1 Sup. Ct. Rep. 140; Kneeland v. Trust Co., 136 U. S. 101, 10 Sup. Ct. Rep. 950; Central Trust Co. v. Wabash, etc., R. Co., 23 Fed. Rep. 863, 34 Fed. Rep. 259.

The prayer of the petitioner is denied.